SBK:MLY
F.#2010R01153

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

COURTNEY DUPREE,

           Defendant.

- - - - - - - - - - - - - - - - X

M-11-271

TO BE FILED UNDER SEAL

COMPLAINT AND AFFIDAVIT
IN SUPPORT OF APPLICATION
FOR ARREST WARRANT

(18 U.S.C. § 1344)

        Dane Wesley, being duly sworn, deposes and says that he is a Postal Inspector with the United States Postal Inspection Service ("Inspection Service"), duly appointed according to law and acting as such.

        Upon information and belief, there is probable cause to believe that in or about and between August 1, 2010 and March 1, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant COURTNEY DUPREE did knowingly and intentionally execute and attempt to execute a scheme and artifice to defraud Amalgamated Bank, a financial institution, and to obtain moneys, funds, credits and other property owned by, and under the custody and control of, Amalgamated Bank, by means of materially false and fraudulent pretenses, representations and promises.

        (Title 18, United States Code, Section 1344.)

The source of my information and the grounds for my belief are as follows[1]:

1. I have been employed as a Postal Inspector for the Inspection Service since 1993, and am currently assigned to the Hicksville, New York Multi-functional team. I am one of the case agents with primary responsibility for this investigation. While working for the Inspection Service, I have participated in numerous investigations of criminal activity, including the investigation of bank fraud, securities fraud, money laundering schemes, and other wire fraud schemes. During the course of these investigations, I have conducted or participated in surveillance, undercover transactions, the execution of search warrants, debriefings of informants, and reviews of taped conversations and financial records.

2. I am familiar with the information contained in this affidavit based on my personal participation in the investigation, my review of documents, my training and experience, and my discussions with other law enforcement personnel concerning the investigation. Additionally, statements herein attributable to individuals are set forth in substance and in part.

---

[1] Because the purpose of this affidavit is only to establish probable cause to arrest the defendant, I have not included each and every fact known to me concerning this investigation.

3. From in or about and between January 2007 and June 2010, COURTNEY DUPREE orchestrated a scheme to defraud Amalgamated Bank by obtaining loans for subsidiaries of GDC Acquisitions, LLC ("GDC"), a holding company in Long Island City, New York, that DUPREE owned, operated and controlled, on the basis of false financial statements and other material misrepresentations. As a result of the fraud, GDC obtained approximately $21 million in loans from Amalgamated Bank, an FDIC insured institution.

4. On or about August 29, 2008, three of GDC's subsidiaries (the "Subsidiaries") and Amalgamated Bank entered into an agreement (the "Agreement") under which the Subsidiaries could borrow up to $21 million from Amalgamated Bank through a revolving credit loan and a term loan. GDC guaranteed the revolving credit loan and the term loan. DUPREE signed the Agreement. One of the Subsidiaries was Hudson Bay Environments Group, LLC ("Hudson Bay"), a furniture distributor, and another was Unalite Electric and Lighting, LLC ("Unalite"), a lighting maintenance company.

5. Under the terms of the Agreement, Amalgamated Bank's collateral included the Subsidiaries' accounts receivable

and deposit accounts, "whether now owned or hereafter acquired or arising, and all proceeds or products thereof."[2]

6. The Agreement provided that the maximum amount that the Subsidiaries could borrow under the revolving credit loan in any given month was based, in part, on a percentage of their accounts receivable. In order to enable Amalgamated Bank to verify that the Subsidiaries did not exceed the borrowing limit, the Agreement required that the Subsidiaries submit monthly Borrowing Base Certificates ("BBCs") to Amalgamated Bank stating, among other things, the total value of their accounts receivable.

7. In furtherance of the scheme to defraud, the defendants deliberately and falsely overstated the accounts receivable on the consolidated financial statements and BBCs that they supplied to Amalgamated Bank. They achieved this result by a variety of means, including: (a) booking fictitious sales, thereby creating fictitious accounts receivable; (b) "re-aging" the accounts receivable by issuing credits for old sales invoices, then re-booking the sales so that they appeared to have been incurred more recently, and were thus more valuable;

---

[2] "Accounts receivable is money owed to a business by customers who have bought goods or services on credit. Accounts receivables are current assets that continually turn into cash as customers pay their bills." David L. Scott, Wall Street Words 3 (3d ed. 2003).

(c) prematurely recognizing sales and the corresponding revenue, thereby creating accounts receivable before the appropriate time under generally accepted accounting principles; and (d) failing to reduce the accounts receivable with cash received from customers, and instead improperly booking the cash in another line item on the balance sheet.

8.      On July 23, 2010, DUPREE was arrested on a complaint charging him with conspiracy to commit bank fraud, mail fraud, and wire fraud. DUPREE was released on a secured bond; one condition of the bond was that he not commit any new crimes while on release. On August 13, 2010, a grand jury returned a four count indictment against DUPREE and others for one count of conspiracy to commit bank, wire, and mail fraud, one substantive count of bank fraud, and two counts of making false statements to a bank. DUPREE was arraigned on the indictment on August 25, 2010, and the conditions of DUPREE's release were continued.

9.      Following DUPREE's arrest, on or about August 4, 2010, Amalgamated Bank obtained a temporary restraining order against DUPREE, GDC, and the Subsidiaries, among others, in New York State Supreme Court providing that all of the Subsidiaries' "collections," including payments of accounts receivable, were to be deposited in accounts at Amalgamated Bank:

> The Borrower Defendants [the Subsidiaries] and the
> Individual Defendants [which include DUPREE], and all
> persons or entities controlled by any of them,
> directly, or indirectly, are temporarily restrained
> and enjoined from moving, removing, transferring,
> encumbering or otherwise taking any further action to
> the detriment of plaintiffs with respect to any assets
> of the Borrower Defendants, including the Collateral
> or the Image/TDC Collateral . . . other than in the
> ordinary course of business; . . . All collections and
> the money in the "Chase Bank" accounts are to be
> deposited into the Amalgamated Bank accounts.

(Amalgamated Bank v. JDC Lighting, LLC et al., Index No. 651184/2010, Aug. 4, 2010 Order of Justice Kornreich, NYS Supr. Ct., Comm. Div.). On or about August 24, 2010, after hearing argument, Justice Kornreich ordered that the previously ordered relief would remain in place.

10. From on or about August 4, 2010 to on or about March 1, 2011, DUPREE engaged in a scheme to defraud in which he intentionally hid from Amalgamated Bank accounts receivable, deposit accounts and other assets of the Subsidiaries to which Amalgamated Bank was entitled as repayment of its loan proceeds. DUPREE then used some of these assets to pay for personal expenses. DUPREE's actions were in direct violation of the Agreement and Judge Kornreich's order.

11. As part of the scheme, DUPREE deposited approximately $338,000 in payments that Hudson Bay received from its customers into a bank account at Capital One Bank in the name of Hudson Bay. DUPREE was the only signatory on the

account.  Given that the account at Capital One was a deposit account of one of the Subsidiaries, and that the customer payments were received for goods and services provided by Hudson Bay, the money was collateral under the terms of the Agreement, and constituted "collections" under the terms of Justice Kornreich's order.

12. DUPREE converted approximately $331,000 of this approximately $338,000 to his personal use.  DUPREE withdrew approximately $41,000 in cash from Hudson Bay's account during this period.  He also transferred an additional $290,000 from the Hudson Bay bank account to an account in his name at TD Bank, which account he had opened on or about September 1, 2010.  DUPREE did so without giving notice to Amalgamated Bank.  DUPREE used the money that he transferred to the TD Bank account to pay for various personal expenses, including a car lease, rent, an American Express Card, mortgages on properties that he owns, payments to his lawyers, payments to his brother, and cash withdrawals.

13. From on or about January 1, 2010 to on or about March 1, 2011, DUPREE deposited at least $83,000 into an account in the name of Unalite at Citibank, which account he had opened on or about December 16, 2010.  DUPREE did so without giving notice to Amalgamated Bank.  DUPREE was the only signatory on the account.  Given that the account at Citibank was a deposit

account of one of the Subsidiaries, the account constituted collateral under the terms of the Agreement and "collections" under the terms of Justice Kornreich's order.

14. On or about October 28, 2010, DUPREE filled out forms with the U.S. Postal Service to have the mail for Hudson Bay and Unalite forwarded from GDC's office in Long Island City, New York to an office suite at 708 Third Avenue, New York, New York rented from NYC Office Suites. DUPREE did so without giving notice to Amalgamated Bank. Employees of NYC Office Suites have stated that they distributed mail for these companies to DUPREE when he came to the office.

15. Based on all of the foregoing information, I conclude that there is probable cause to believe that COURTNEY DUPREE knowingly and intentionally executed a scheme and artifice to commit bank fraud, contrary to Title 18, United States Code, Section 1344.

WHEREFORE, I respectfully request that an arrest warrant be issued so that the defendant COURTNEY DUPREE may be dealt with according to law. Furthermore, I respectfully request that this affidavit be filed under seal, except that the Inspection Service may disclose this affidavit and the arrest

warrant as necessary to effectuate the arrest and arraignment of the defendant.

_____
DANE WESLEY
Postal Inspector
U.S. Postal Inspection Service

Sworn to before me this
14 day of March, 2011.

_____   s/ Pollak
UNITED                              JDGE
EASTERN                             RK